The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications to Conclusion of Law Number 5 and Award Number 2.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. Travelers Insurance Company was the carrier on the risk at all relevant times.
4. The parties stipulated that the plaintiff suffered a compensable injury by accident on July 18, 1996 to his neck while employed by the defendant-employer.
5. Pursuant to the Industrial Commission Form 22 on the date of the compensable injury by accident, the plaintiff's average weekly wage was $412.72, yielding a compensation rate of $275.16.
6. The issue presented is:
 a. Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff-employee was 32 years old. The plaintiff-employee began working for the defendant-employer in February of 1996.
2. On July 18, 1996, the plaintiff-employee sustained an admittedly compensable injury by accident to his neck. Due to neck pain, the plaintiff-employee left work without completing his shift.
3. The plaintiff-employee continued to experience headaches and arm pain and presented to Anderson Creek Medical Center where Dr. Lewis treated the plaintiff-employee conservatively. Within two days, the plaintiff-employee's pain began to radiate into his shoulder and into his forearm, with headaches, numbness and spasms. The plaintiff-employee was referred to Dr. S. David Ciliberto, an orthopaedist.
4. On July 23, 1996, Dr. Ciliberto diagnosed the plaintiff-employee with cervical strain with mild right radiculopathy. The plaintiff-employee was fitted with a soft cervical collar and prescribed medication.
5. On July 31, 1996, Dr. Ciliberto admitted the plaintiff-employee to Central Carolina Hospital due to his neck and head pain with headaches, and guarded range of motion with limited range of motion of his head and neck. Dr. Ciliberto put the plaintiff-employee in cervical traction. After three days, the plaintiff-employee's headache ceased and the plaintiff-employee had full range of motion of his head and neck with only minor stiffness. Dr. Ciliberto discharged the plaintiff-employee on August 3, 1996 and restricted the plaintiff-employee's work activity until his next orthopaedic appointment on August 6, 1996.
6. On August 6, 1996, Dr. Ciliberto released the plaintiff-employee to return to light duty work. Dr. Ciliberto limited the plaintiff-employee's overhead lifting and restricted him from lifting more than 20 pounds.
7. The plaintiff-employee returned to work on August 8, 1996. The plaintiff-employee's light duty job included lifting panels, which was within the restrictions of Dr. Ciliberto. However, the plaintiff-employee only worked a few hours due to neck pain and then went home.
8. The plaintiff-employee failed to return to Dr. Ciliberto and instead self-referred without authorization to the emergency room at Good Hope Hospital where he treated with his family physician, Dr. John R. Mann, a general practitioner. Dr. Mann first examined the plaintiff-employee on August 14, 1996 and found the plaintiff-employee to be disabled. Dr. Mann ordered an MRI and the results were normal.
9. Dr. Mann was unaware that Dr. Ciliberto had released the plaintiff-employee to light duty work on August 6, 1996 or that the plaintiff-employee had returned to light duty work within his restrictions with the defendant-employer for a few hours. However, Dr. Mann later opined that he had no reason to dispute any light duty release by Dr. Ciliberto.
10. Dr. Mann released the plaintiff-employee to light duty on August 30, 1996 and to normal duty on October 11, 1996. Dr. Mann opined that according to the job description of the panel position, the plaintiff-employee was capable of performing the job as of August 30, 1996. However, the plaintiff-employee did not return to work until September 4, 1996.
11. The plaintiff-employee did not inform the defendant-employer about his evaluation by Dr. Mann, nor did he return to work or to Dr. Ciliberto for further treatment.
12. The plaintiff-employee failed to complete a full day on August 8, 1996 in the suitable light duty position which was within the restrictions given by his treating physician, Dr. Ciliberto.
13. The defendant-employer requested on several occasions that the plaintiff-employee return to Dr. Ciliberto before they could re-offer the plaintiff-employee a position. However, the plaintiff-employee refused and was therefore placed on suspension pending an evaluation by Dr. Ciliberto. The defendant-employer ultimately terminated the plaintiff-employee on or about September 23, 1996.
14. The plaintiff-employee refused to return to Dr. Ciliberto until ordered by the Deputy Commissioner. Furthermore, the plaintiff-employee never requested approval from the Industrial Commission to select his own physician.
15. On November 18, 1996, the plaintiff-employee began working full-time at Edward Brothers in Lillington at $7.03 per hour for 40 hours per week. Thereafter, he received a raise up to $8.72 per hour.
16. There is conflicting medical evidence in the record. However, the undersigned give greater weight to the opinion of Dr. Ciliberto than to that of Dr. Mann, because Dr. Ciliberto is an orthopaedist and is the plaintiff-employee's treating physician, while Dr. Mann is a general practitioner and was not privy to the plaintiff-employee's complete medical or job history.
17. As of August 6, 1996, the plaintiff-employee was capable of performing the panel position which was within his restrictions. Nevertheless, the plaintiff-employee unjustifiably refused suitable employment when he worked for only a few hours and then refused to continue.
18. The plaintiff-employee has reached maximum medical improvement and retains no permanent partial disability.
19. Defendants are entitled to a full credit for unemployment compensation paid to the plaintiff-employee in the amount of $2,212.00.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 18, 1996, the plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with the defendant-employer. N.C. GEN. STAT. §97-2(6).
2. When an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission, such refusal was justified. N.C. GEN. STAT. § 97-32.
3. The plaintiff's failure to return and remain at work on August 8, 1996 was a refusal to accept employment offered by the defendant-employer and was not justified. N.C. GEN. STAT. §97-32.
4. The plaintiff is entitled to temporary total disability benefits subject to defendants' credit for unemployment compensation paid to the plaintiff beginning July 19, 1996 at a rate of $275.16 and continuing until August 8, 1996 when the plaintiff unjustifiably refused suitable employment. N.C. GEN. STAT. § 97-29, § 97-42 and § 97-32.
5. The plaintiff is entitled to have defendants pay all related medical expenses reasonably necessary to effect a cure, give relief or lessen the period of disability, subject to the limitations in the provisions of N.C. Gen. Stat § 97-25.1, except for any expenses for treatment provided by Dr. Mann, as his treatment was unauthorized and the plaintiff did not seek approval from the Industrial Commission to select his own physician. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay the plaintiff, on account of his temporary total disability, compensation at the rate of $275.16 per week beginning July 19, 1996 and ending August 8, 1996, less defendants' credit for unemployment benefits paid. As said compensation has accrued, it shall be paid in a lump sum subject to a reasonable attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff, subject to the limitations provided in N.C. Gen. Stat. § 97-25.1, except for expenses for Dr. Mann's treatment, as a result of the plaintiff's July 18, 1996 injury by accident.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel which shall be paid out of the accrued benefits.
4. Defendant shall pay all costs, including an expert witness fee in the amount of $155.00 to Dr. Mann.
This the ____ day of March 1999.
 S/ _____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN JR. CHAIRMAN
S/ _____________ THOMAS J. BOLCH COMMISSIONER
DCS/bjp